861 So.2d 149 (2003)
STATE of Louisiana
v.
Tory BOATNER.
No. 2003-K-0485.
Supreme Court of Louisiana.
December 3, 2003.
Rehearing Denied January 16, 2004.
*151 Richard P. Ieyoub, Attorney General, Eddie J. Jordan, Jr., District Attorney, Valentin M. Solino, for Applicant.
Bruce G. Whittaker, for Respondent.
WEIMER, Justice.
Tory Boatner was indicted for second degree murder. A jury found him guilty as charged and he was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant appealed. Following a convoluted appellate process the defendant's conviction and sentence were vacated and the matter remanded for a new trial. This court granted the State's writ application to consider whether omissions in the trial transcript denied defendant the right to appellate review. State v. Boatner, 03-0485 (La.6/6/03), 845 So.2d 1073.
For reasons that follow, we reverse the ruling of the court of appeal and affirm defendant's conviction and sentence.

FACTS AND PROCEDURAL BACKGROUND
During the early morning hours of February 17, 1999,[1] the defendant, his brother Christopher, and his sister Christine were at a lounge called "Lodie's". The victim, Percy Brown, and his sister Jewel were also at the lounge. A fight occurred between Christine Boatner and Keisha Tipit. Jewel attempted to aid Keisha but was prevented from doing so by someone holding her against the wall. The bar's bouncers broke up the fight and asked the Boatners to leave the premises. Percy and Jewel, followed by Tonette Johnson and Roxanne Robinson, left the lounge a short time later. Once outside, Christine continued to taunt Keisha. She removed the belt she was wearing and hit Keisha in the back with the buckle. Percy argued with his sister urging her to leave, but she did not want to abandon her friend.
Tory, the defendant, and his brother, Christopher, who were standing outside the bar, suddenly disappeared. When they reappeared on the scene, Tory was carrying a gun. Christopher kept asking for the gun but Tory refused to give it to him. According to witnesses, shots were fired and everyone began running. Percy pulled his sister toward the car and told her to run. Tonette and Roxanne heard about five shots, saw Percy fall to the ground and the three Boatners and an unidentified female run from the scene down Lafreniere Street toward Paris Avenue. During the police investigation which followed, Roxanne identified the defendant as the person who fired the fatal shots. Roxanne and Tonette each selected the defendant in a photographic lineup, identifying him as the shooter. Approximately three weeks after the crime, Tory Boatner was arrested. He was indicted by a grand jury for the second degree murder of Percy Brown. A jury convicted him as charged. He was sentenced to life in prison without benefit of parole, probation, or suspension of sentence by the trial court in accordance with law.
Defendant appealed assigning two errors: (1) the jury charges failed to include the definition of the offense of second degree murder and failed to include a definition *152 of the responsive verdict of manslaughter; and (2) the transcript of the trial record was so defective as to deprive defendant of his constitutional right of appeal.
On appeal, the court initially vacated defendant's conviction and sentence for failure of the trial court to provide any guidance to the jury on the elements of the offense charged and the responsive verdicts. State v. Boatner, 01-1659 (La.App. 4 Cir. 6/26/02), 844 So.2d 843. The State filed an application for rehearing and a request to supplement the record with the transcript of the jury charges. That application was granted, following which the court of appeal affirmed the conviction and sentence. State v. Boatner, 01-1659 (La. App. 4 Cir. 8/14/02), 844 So.2d 847.
Defendant then requested a rehearing claiming that omissions in the evidentiary portion of the record denied him the right to appellate review. The court of appeal, in a two to one decision, set aside the defendant's conviction and sentence and remanded the matter for a new trial holding that defendant was prejudiced by the amount of dialogue that was unable to be transcribed. Based on the reasoning in State v. Bright, XXXX-XXXX (La.App. 4 Cir. 2/6/02), 809 So.2d 1112, 1117, writ denied, 02-0698 (La.11/1/02), 828 So.2d 563, the court found the cumulative effect of the omissions rendered the record inadequate. State v. Boatner, 01-1659 (La.App. 4 Cir. 1/15/03), 844 So.2d 851.
In dissent, Chief Judge Byrnes[2] reasoned that the defendant was not entitled to relief absent a showing of prejudice based on the missing portions of the transcript. Judge Byrnes observed the issues to be analyzed were the court's ability to review the record and a demonstration by defendant of the manner in which he was prejudiced. Judge Byrnes noted that omissions do not necessarily constitute reversible error. The defendant must establish that the omitted portions of the transcript caused him prejudice. Boatner, 01-1659 at 1, 844 So.2d at 854 (Byrnes, J., dissenting).
Following that decision, the State filed an application for writ of certiorari which this court granted. State v. Boatner, 03-0485 (La.6/6/03), 845 So.2d 1073.

DISCUSSION
The issue before the court is whether defendant was denied his constitutional right to judicial review of his conviction and sentence because of the numerous "inaudible" notations in the transcribed record.
Both this court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly where appellate counsel was not counsel at trial. State v. Deruise, 98-0541, p. 11 (La.4/3/01), 802 So.2d 1224, 1234, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), citing Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) and State v. Robinson, 387 So.2d 1143 (La.1980). The Louisiana State Constitution guarantees that "[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." LSA-La. Const. art. I § 19. Additionally, in all felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony *153 of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. LSA-C.Cr.P. art. 843. The court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required. LSA-R.S. 13:961(C).
Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214; Robinson, 387 So.2d at 1144. Although this court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. State v. Brumfield, 96-2667, pp. 14-16 (La.10/28/98), 737 So.2d 660, 669, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); State v. Parker, 361 So.2d 226, 227 (La.1978). A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Hawkins 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480.
A complete review of the trial transcript reveals instances in which the court reporter could not hear exchanges between the parties. The defense points out there are a significant number of inaudibles throughout the record suggesting there are no less than 210 instances in which the testimony was inaudible. Defense counsel points out there are instances in which the question is inaudible as well as the corresponding answer. Defense counsel argues the reader is left to guess what was said during those instances.
The State asserts defendant has failed to show that he suffered prejudice because of those omissions. The State contends that one can accurately determine what has been said by reading the entire transcript. The court reporter distinguishes between speakers and uses the "Q" and "A" format even when there are inaudible questions or answers indicating that no speaker has been left out.
The crucial issue is not the amount or number of omissions but rather whether the omissions are material and caused prejudice to the defendant. The determination of whether the omissions are material must be made on a case by case basis. The critical inquiry is whether the defendant's right to judicial review guaranteed by La. Const. art. 1, § 19 can be performed or is the record so inadequate that the defendant's constitutional right to judicial review is prejudiced. Defendant must establish that he was prejudiced by the missing portions of the transcript. Despite the state of the record, defendant has failed to demonstrate any reasonable likelihood that he suffered prejudice resulting from the inadequacy of the record.
The testimony of all witnesses was identified and transcribed. The "Q" and "A" format was used throughout the transcript. The State called two eyewitnesses, the detective who investigated the crime and conducted the photographic lineup, a firearms examiner with the crime lab, a forensic pathologist, and a paramedic who had been called to the scene immediately after the shooting. Defendant testified on his own behalf and called his mother, the two eyewitnesses, and the investigating detective as witnesses during the presentation of his defense.
*154 The appellate majority focused on two portions of the record when concluding that omissions were material and hence that defendant's conviction must be reversed. First, the majority focused on a portion of testimony attributed to Tonette Johnson regarding identification of State's Exhibits 10, 11, and 12 as an example of material omissions. In actuality, the testimony referenced by the court was not elicited during the examination of the eyewitness Tonette Johnson, but during the examination of Detective Andre Gilds who conducted the photographic lineups. Additionally, the record confirms that those exhibits (10, 11, and 12) were never introduced into evidence.
The court of appeal also noted there were numerous inaudible portions of the defendant's testimony as well as the closing argument of the state. The court of appeal found that the cumulative effect of the omissions rendered the record inadequate.
Following a thorough review of the record, we disagree. We find the inaudible portions of the transcript do not preclude a complete review. Many inaudible designations occurred when witnesses were repeatedly asked for the same information. As previously indicated, three of the State's witnesses were recalled during presentation of the defense. Although defendant's own testimony contained some inaudible responses, there has been no showing that a less than complete transcription of his testimony has prejudiced him in any way. Likewise, the reference to the State's closing argument is without merit. Closing arguments are not evidence to be considered by the jury. Consistent with the transcript, the minutes of court do not reflect that any objections were made during the closing argument, and thus, any error was not preserved for review.
The minutes of court indicate the jury was chosen on August 2, 1999, and that following the selection of the jury, the trial was recessed at 1:20 p.m. and the jurors ordered to return on August 4, 1999 at 8:15 a.m. with the trial reset for August 4, 1999. The minutes of court indicate the trial began on August 4, 1999, at 8:44 a.m. with the trial judge reading the bill of information. The trial concluded the same day with the jury returning a verdict at 6:25 p.m.
The court minutes also reveal that all but two of the State's exhibits admitted into evidence were admitted without objection. The two exhibits to which the defense objected, No. 9 and No. 14, were admitted over the objection. One was the photographic lineup shown to Roxanne Robinson and the other was a photograph of the victim's head. No appeal was taken from the rulings allowing the admission of this evidence.
The State's case rested almost entirely on the testimony of Tonette Johnson and Roxanne Robinson, the two eyewitnesses. The jury was presented with a relatively straightforward credibility determination which required the jury to choose between conflicting accounts concerning defendant's actions on the night of the offense. One of the eyewitnesses, Roxanne Robinson, supplied authorities with defendant's name after the crime indicating that she knew the defendant beforehand. Both eyewitnesses identified the defendant as the shooter in photographic lineups conducted at separate times prior to his arrest. The two eyewitnesses testified at trial and identified defendant as the shooter.
Defendant testified on his own behalf. Although his trial testimony was not perfectly transcribed, the essence of his testimony could be ascertained from the record. He admitted being at Lodie's bar *155 with his brother and sister on the night in question. He testified that he did not get involved in his sister's fight but was merely a bystander. He claimed that he wore different clothing than that described by one of the eyewitnesses. As he was leaving the bar, he was delayed by the security guard. When he exited the establishment he saw a crowd gathered at the corner. Just before he got to the corner, he heard a shot. Defendant testified he ran after hearing the shot. Defendant emphatically denied knowing the eyewitnesses, having a gun or shooting the victim. He also testified that he did not know the victim.
The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. Deruise, 98-0541 at 26, 802 So.2d at 1243; State v. Howard, 98-0064, p. 14 (La.4/23/99), 751 So.2d 783, 801, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). A reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La.1988). In this case, the jury's verdict demonstrates that the fact finders accepted the testimony provided by the State's witnesses and rejected defendant's claim that he was not the shooter. This court cannot say that the jury's determination was irrational.
An incomplete record may be adequate for full appellate review. See Hawkins, 96-0766 at 8, 688 So.2d at 480. Additionally, we note there exists a presumption of regularity in judicial proceedings. LSA-R.S. 15:432.[3] The record in this matter is adequate for the court to examine and determine there was sufficient evidence to support a conviction. Defendant has failed to show how he was prejudiced by the missing portions of the testimony replaced by an "inaudible" designation. Unlike other cases reviewed by this court, the record did not lack the complete testimony of one or multiple witnesses or significant steps in the trial procedure.
As to the possibility that the trial court erroneously ruled on the merits of any untranscribed defense objections, given the eyewitness testimony offered by the State, it appears that any such errors would be harmless. The question raised by erroneous admission of evidence is whether the trial court's error in admitting such evidence was harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421, 427-28 (La.1980); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To be harmless, the improperly admitted evidence must not have contributed to the verdict. State v. Wille, 559 So.2d 1321, 1332 (La.1990); State v. Banks, 439 So.2d 407, 409 (La. 1983).
While acknowledging the transcript is not perfect, we do not find any material omissions. Based upon the record, we *156 find defendant has been afforded the right to judicial review guaranteed by the Louisiana Constitution. We also find defendant has failed to demonstrate he suffered prejudice resulting from the perceived inadequacy of the record. Therefore, we reverse the court of appeal decision remanding the matter for a new trial and reinstate the verdict of the jury and the mandatory sentence imposed by the trial court of life without benefit of parole, probation, or suspension of sentence. Defendant's conviction and sentence are affirmed.

CONCLUSION
The jury heard all of the testimony and witnessed the demeanor of the witnesses as they testified. The jury made a determination based upon the testimony and exhibits introduced into evidence. The record adequately supports that verdict and should not be disturbed.
For the foregoing reasons, we find that defendant has failed to demonstrate any prejudice from the transcript of his trial despite the numerous inaudible responses contained therein. Defendants are guaranteed a right to appeal "based upon a complete record of all evidence upon which the judgment is based." La. Const. art. I, § 19. Our review of the record indicates the defendant was afforded such a right.
REVERSED; CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Mardi Gras was celebrated on February 16, 1999.
[2] Chief Judge William H. Byrnes III died on October 21, 2003, after serving on the Fourth Circuit Court of Appeal for nearly 22 years.
[3] LSA-R.S. 15:432 provides:

A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.