# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 08-762


**STATE OF LOUISIANA**

**VERSUS**

**TERRELL STIPE**


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 12259-06(ASCENSION PARISH)
HONORABLE ALVIN TURNER, JR., DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Donald David Candell**
**Assistant District Attorney**
**712 North Burnside Avenue**
**Gonzales, LA 70737**
**Counsel for Appellee:**
**State of Louisiana**

**Anthony Gerard Falterman**
**P. O. Box 69**
**Napoleonville, LA 70390-0000**
**Counsel for Appellee:**
**State of Louisiana**

**Shawn Rene Bush**
**Assistant District Attorney**
**12320 Hwy. 44, Bldg. 4, Ste. A**
**Gonzales, LA 70737**
**(225) 647-1015**
**Counsel for Appellee:**
**State of Louisiana**

**William Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Appellant:**
**Terrell Stipe**

**SAUNDERS, Judge.**

Defendant, Terrell Stipe, was charged with one count of attempted second degree kidnapping, a violation of La.R.S. 14:44.1 and 14:27, and one count of attempted armed robbery with the use of a firearm, a violation of La.R.S. 14:64, 14:64.3, and 14:27. Defendant was convicted of attempted second degree kidnapping, but acquitted of the attempted armed robbery by a jury on July 28, 2006. Defendant filed a "Motion for New Trial Post Verdict Judgment of Acquittal" on August 30, 2007. After waiving all delays, Defendant was sentenced to ten years at hard labor, credit for time served, with one year to be served without the benefit of parole, probation, or suspension of sentence.

Defendant has perfected a timely appeal, alleging four assignments of error: 1) The unavailability of the complete pre-trial and trial transcripts render an effective appeal impossible; 2) There is insufficient evidence to prove the guilt of defendant for the offense of attempted second degree kidnapping beyond a reasonable doubt; 3) The trial court erred in denying defendant's Motion for New Trial; and 4) The sentence imposed is excessive for this offender and offense.

We find no merit to Defendant's assignments of error. Accordingly, we affirm his conviction.

## FACTS:

On the evening of November 19, 2005, Ontario McNeely, a lieutenant with the West Feliciana Parish Sheriff's Office, attended a football game at Dutchtown High School with his former wife and their two sons. After the game, they walked out to the high school's parking lot. She and the two sons got into her car, and when the lieutenant approached his car, a man wearing a hooded sweat shirt put a gun against the lieutenant's stomach and told him to get into the truck. The lieutenant told the

man he was a police officer. As he pulled out his badge, the man backed away. The lieutenant reached into his truck and retrieved his gun and chased the man, but lost him when the man entered a wooded area. A few weeks later, the man was apprehended and the lieutenant identified him from a photographic line-up.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**ASSIGNMENT OF ERROR NUMBER 2:**

Although Defendant alleges I his first assignment of error that the record is insufficient for an effective review on appeal, we find that after a thorough review of the record, the trial record is sufficient to address Defendant's allegation that the State failed to prove all the elements of the crime of attempted second degree kidnapping beyond a reasonable doubt at trial. Accordingly, we will address Defendant's second assignment of error first for the reason that should there be merit to the assignment, he would be entitled to an acquittal and the remaining assignments of error would be moot. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981); *State v. Hearold,* 603 So.2d. 731 (La.1992).

Defendant argues that there was insufficient evidence for jury to have found him guilty of attempted second degree kidnapping. First, Defendant contends that the State failed to proved his specific intent to kidnap. Second, he asserts that there was a lack of evidence that an attempted kidnapping occurred under any of the circumstances listed in La.R.S. 14:44.1(A). Third, Defendant argues that there was a strong possibility of misidentification of himself as the man who approached the

2

victim. Defendant argues that these three culminate in a verdict that should be reversed.

Second degree kidnapping is defined as "the doing of any of the acts listed in Subsection B wherein the victim is":

(1) Used as a shield or hostage:

(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;

(3) Physically injured or sexually abused;

(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or

(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

La.R.S. 14:44.1

The offense of attempt is defined as:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A).

3

Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. La.R.S. 14:10(1).

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Bosley,* 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, *writ denied,* 97-1203 (La.10/17/97), 701 So.3d 1333.
>
> The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the evidence by viewing that evidence in the light most favorable to the prosecution. *State v. Sutton,* 436 So.2d 471 (La.1983); *State v. Owens,* 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, *writ denied,* 98-2723 (La.02/05/99), 737 So.2d 747.
>
> . . . . The determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Huizar,* 414 So.2d 741 (La.1982)*; State v. Butler,* 322 So.2d 189 (La.1975); *State v. Dean,* 528 So.2d 679 (La.App. 2d Cir.1988). In reviewing the correctness of such a determination, this court considers the evidence in a light most favorable to the prosecution to see if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. *Jackson v. Virginia, supra; State v. Huizar, supra.*

*State v. Davis*, 35,783, pp. 4-5 (La.App. 2 Cir. 4/5/02), 813 So.2d 1262, 1265, *writ denied*, 02-1564 (La. 5/9/03), 843 So.2d 389.

At trial, the jury heard testimony and reviewed physical evidence as follows:

Lieutenant McNeely testified that following the nighttime football game at Dutchtown High School, he and his former wife and their two sons walked to their respective vehicles in the high school parking lot. When he reached his truck, which was parked next to a light pole, he opened the back door of the truck and put his camcorder on the back seat. A young black man walked rapidly up to him and put a gun against his stomach and demanded, "Get in the truck, homey, get in the truck,

4

homey." The lieutenant stated that the man was nervous, looking around at the cars pulling out of the lot, which gave him an opportunity to pull out his badge and tell the man he was a police officer and that he was not going to get into the truck. The man backed away and the lieutenant grabbed his firearm out of the truck. Lieutenant McNeely testified:

> I grabbed my firearm and he took off running across the parking lot. As I was going across the parking lot chasing him, I observed a lime green [C]adillac speeding off behind me.

> So my ex-wife was also present and my kids, and I had her to follow the car out the parking lot to try to get a license plate number as I gave chase to the defendant through a grassy pasture.

The lieutenant lost the man in the woods beyond the pasture. He described the man as between five feet, ten inches and six feet tall, wearing a gray hooded sweat shirt, one hundred sixty to one hundred eighty pounds, possible gold teeth, and the man had a black revolver. He stated that he had a good look at the man. They were standing under a light and he looked the man straight in the face.

The lieutenant called 911 and officers arrived immediately on the scene. He testified that he gave a report to Eric Villavaso, a detective with the Ascension Parish Sheriff's Office. He gave Detective Villavaso the man's description and a description of the Cadillac. He said the Cadillac, besides being a lime green color, had a third tail light on the trunk that extended the entire length of the trunk, and a temporary tag in the back window.

A few days later, Detective Villavaso e-mailed Lieutenant McNeely a series of pictures of Cadillacs similar to the one he described and asked him if any resembled the Cadillac he saw speeding away from the high school parking lot. He called the detective and told him which car was most similar.

5

On December 6, 2005, Lieutenant McNeely was called to go to St. James Parish Sheriff's Office to look at a vehicle. There he identified a Cadillac that "appeared to be the same vehicle that left the parking lot that night." That same day, Detective Villavaso called and asked him to come to the Ascension Parish Sheriff's Office to view some photographs. There, he was given a photographic line-up with pictures of six black males similar in age and size. He identified Defendant as the man who approached him with a revolver in Dutchtown High School's parking lot.

Letecia McNeely, Lieutenant McNeely's former wife, testified that after they had walked out into the parking area, she and their two sons got in her car. She was parked a short distance from the Lieutenant McNeely's truck, and, as she waited for him to get into his truck and pull out, she saw a man get out of the passenger side of a lime green Cadillac and approach him. She thought they were exchanging words, then she saw Lieutenant McNeely flash his badge. She stated that after the lieutenant flashed the badge, "the car that he [Defendant] got out of proceeded to leave out like [it] was just a regular car getting into traffic to leave."

Next, Ms. McNeely stated that Lieutenant McNeely told her to try and get the tag numbers of the car, and then took off after the man, but she was unable to get close enough to see the numbers before the car turned out of the parking lot, because of all the other cars attempting to leave at the same time. She described the man as wearing a "gray hooded sweat shirt with some gray sweat pants, some black tennis shoes. He had on either blue or black gloves." She stated she could see him because "where McNeely['s] truck was parked at, the light was shining on the truck." However, she could not see his face as the hood on the sweat shirt was over his head. Later, she was shown a picture of the vehicle the lieutenant had seen at St. James

6

Parish Sheriff's Office and also stated that it was very similar to the Cadillac she saw the hooded man get out of before he approached the lieutenant.

Juliet Zerangue, a detective with the St. James Parish Sheriff's Office, testified that she had searched the lime green Cadillac identified by Lieutenant McNeely and his former wife as being very similar to the vehicle they had seen. In the glove compartment she located a bill of sale, showing that the car had been sold to Defendant a few months prior to the incident, and an invoice for a paint job of the vehicle.

*Insufficient evidence:*

As noted above, "[s]pecific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). The provisions of La.R.S. 14:44.1 apply when one act mentioned in Subsection (B) combines with any one act listed in Subsection (A). *See State v. Arbuthnot*, 625 So.2d 1377 (La.App. 1 Cir. 1993). Accordingly, for the purpose of this case, the State had to prove that Defendant forcibly seized and carried the victim from one place to another while armed with a dangerous weapon. La.R.S. 14:44.1(A)(5) and (B)(1).

In *State v. Davillier*, 99-1204, pp. 1-2 (La. 12/10/99), 752 So.2d 149, 150 our supreme court found that the evidence was not sufficient to find the accused guilty of second degree kidnapping, but rather found that the "acts tending directly toward accomplishing his purpose, i.e., the relocation of the victim from one place to another," was sufficient evidence of attempted second degree kidnapping. The accused "dragged the victim by the hair from one side of her truck to the other and

7

forced to her to enter the cab, from where she ran and escaped." *Id.* at 150. Our supreme court stated:

> We agree that "the distance traveled during the forcible seizure [is not required to] be any particular length." *State v. Davillier*, 98-0790, p. 5 (La.App. 1st Cir.4/1/99), 739 So.2d 1010. However, La.Rev.Stat. 14:44.1 B(1) requires the state to prove that the offender forcibly seized and carried the victim "from one place to another," a term which requires evidence that the offender relocated the victim from one physical setting or environment to another.
>
> Evidence that relator moved the victim from one side of her truck to the other, and then obtained from her the keys to the vehicle and ordered her inside, did not satisfy La.Rev.Stat. 14:44.1 B(1), as he had not yet moved her from the immediate physical environment in which his initial physical assault had taken place. Accordingly, the conviction of second degree kidnapping must be set aside.

*Davillier*, 752 So.2d at 150.

In *Davillier*, while our supreme court found that an assailant taking a victim from outside a vehicle and forcing them inside a vehicle does not constitute "from one place to another," it did find that the assailant's actions of dragging the victim around by the hair from one side of the truck to the other, taking the keys of her car from her, and forcing her into the cab of her car, from which she escaped, were sufficient evidence of his intent to kidnap the victim. In *State v. Colbert,* 07-947 (La.App. 4 Cir. 7/23/08), 990 So.2d 76, the fourth circuit affirmed an attempted second degree kidnapping conviction where the assailant pulled his ex-girlfriend from the passenger side of her friend's car, dragged the victim over to her own car, took her keys, and pushed her into the back seat of her car, after which she escaped.

In both *Davillier* and *Colbert,* there were acts which indicated the assailants' intent. In the case before us, we also find that the jury could have rationally found that Defendant's acts indicated his active desire to move Lieutenant McNeely from one place to another.

8

The victim in the current case, Lieutenant McNeely, testified that he walked to his truck that was parked next to a light pole. He said that he had just opened the back door of the truck and put his camcorder on the back seat when Defendant approached him. He testified the man was standing close enough to put the gun against his stomach and said "get in the truck, homey." The lieutenant flashed his badge, and Defendant fled.

Given that we must view the evidence in a light most favorable to the prosecution and that any rational finding by the jury must be upheld per *State v. Ordodi*, 06-207 (La. 11/29/06), 946 So.2d 654, we find that there clearly is sufficient evidence in the record that Defendant had the specific intent to commit second degree kidnapping. When Defendant ordered Lieutenant McNeely to get into the truck he, while armed with a dangerous weapon, a gun, actively desired to forcibly seize and carry Lieutenant McNeely from one place, the parking lot, to another, inside the truck and on to unknown destination(s). As such, Defendant's argument that the State failed to prove his specific intent is without merit.

Defendant also contends that there was a strong possibility of misidentification of himself as the man who approached the victim. We do not agree.

> "[R]eliability is the linchpin in determining the admissibility of identification testimony. . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977)(citation omitted).

First, Lieutenant McNeely testified that the area where he was standing was beneath a light pole. Further, he stated that he got a good look at his assailant and

9

looked at him straight in the face. Thus, it is reasonable that he had ample opportunity to view the criminal. Second, Lieutenant McNeely was a trained police officer, who not only had the attention to his detail to notice the assailant, but to also notice from which car the assailant seemed to be associated. Lieutenant's McNeely's attention to detail regarding the vehicle was exceptional as he noticed a third tail light that spanned the length of the trunk and temporary tags in the cars's window. Thus, the witness' degree of attention in this case is much better than average. Third, Lieutenant McNeely described his assailant as between five feet, ten inches and six feet tall, weighing one hundred sixty to one hundred eighty pounds, both of which are accurate for Defendant. Thus, Lieutenant McNeely's prior description was accurate. Fourth, Lieutenant McNeely positively identified Defendant from a line up of six photographs, all of which contained men of similar physical attributes to that of Defendant. Finally, while some time passed between the alleged crime and the positive identification, a little over two weeks, there is no indication in the record that the identification was tainted in any fashion. As a result of the *Manson* factors, we cannot find that there was a strong possibility that the identification of Defendant was a mistake.

Accordingly, we find that the evidence was sufficient for the jury to find Defendant had the requisite intent necessary for an attempted second degree kidnapping. We also find that there was no strong possibility that Defendant was misidentified as he contends. As such, we find the assertion that the evidence was insufficient to prove an attempted second degree kidnapping by Defendant is without merit.

## ASSIGNMENT OF ERROR NUMBER NO. 1:

10

Defendant argues that he is being denied an effective appeal for the reasons that the trial transcript does not contain a complete recording of *voir dire* and jury selection, that there are words and phrases in the transcript which occurred during trial that are omitted as "inaudible," that bench conferences were not recorded, that a motion to suppress hearing was not transcribed and included in the record, and that a motion for a mistrial was not included in the record.

On August 6, 2008, this court ordered the court reporter to attempt to decipher the inaudible responses noted in the record. On September 23, 2008, the court reporter filed an Affidavit with this court in compliance with the order, listing all attempts made to rectify the inadequacies in the record, which were not successful. However, we find that the inadequacies are not such that would render an appellate review of Defendant's appeal ineffective and meaningless.

In *State v. Boatner,* 03-485, pp. 4-5 (La. 12/3/03), 861 So.2d 149, 152-53, the Louisiana Supreme Court stated:

> Both this court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly where appellate counsel was not counsel at trial. *State v. Deruise,* 98-0541, p. 11 (La.4/3/01), 802 So.2d 1224, 1234, *cert. denied,* 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), *citing Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) and *State v. Robinson,* 387 So.2d 1143 (La.1980). The Louisiana State Constitution guarantees that "[n]o person shall be subjected to imprisonment . . . without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." LSA-La. Const. art. I § 19. Additionally, in all felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. LSA-C.Cr.P. art. 843. The court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required. LSA-R.S. 13:961(C).

11

Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. *State v. Landry*, 97-0499 (La.6/29/99), 751 So.2d 214; *Robinson,* 387 So.2d at 1144. Although this court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. *State v. Brumfield*, 96-2667, pp. 14-16 (La.10/28/98), 737 So.2d 660, 669, *cert. denied,* 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); *State v. Parker,* 361 So.2d 226, 227 (La.1978). A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. *State v. Castleberry*, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773, *cert. denied,* 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); *State v. Hawkins* 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480.

## *Voir dire and jury selection:*

Defendant argues in brief that during jury selection, there were dialogues between the judge and defense counsel about peremptory and for-cause challenges. Defendant contends that the *voir dire* record is "dotted" with "inaudible" throughout the transcript. He asserts that at the hearing on his motion for a new trial, defense counsel "made *Batson* challenges to peremptory and cause strikes by the State." He argues that "because the transcript does not contain a complete recording of *voir dire* and jury selection proceedings, an appeal of the *Batson* claims is rendered impossible."

Both in this state and throughout the nation, the law is firmly settled that peremptory strikes may not be based on race in either criminal or civil cases. *See Batson v. Kentucky*, 476 U.S. at 89, 106 S.Ct. at 1719 (dealing with prosecutor's strikes); *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (dealing with defense strikes in criminal trials); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (dealing with civil trials); *State v. Collier*, 553 So.2d 815, 817 (La.1989) (holding that un-rebutted prima facie case requires reversal; La. C. Cr. P. art. 795(c)). If it appears that one party is using its peremptory strikes in a discriminatory manner, the other party may raise the issue by making what has come to be known as a *Batson* objection.

*State v. Myers,* 99-1803, pp. 3-4 (La. 4/1/00), 761 So.2d 498, 500-01.

12

However, a review of the *voir dire* and jury selection record indicates that there were no *Batson* challenges made by defense counsel. The State made four peremptory challenges. Three of the four potential jurors were black. One of the challenges was for an alternate juror who was black. In the case of the first rejected potential juror, when the State exercised its peremptory challenge, defense counsel noted "for the record" that he was a black male. The trial court specifically asked if defense counsel was making a *Batson* challenge, and defense counsel stated that he was not. In the remaining two cases, while noting the rejected potential jurors were black, defense counsel again raised no *Batson* challenges. The issue of a *Batson* violation was never discussed thereafter.

Further we note that of the eight pages of jury selection Defendant listed as where an "inaudible" occurred, the potential jurors were accepted by both the State and defense counsel. Two of the pages of the record listed by Defendant as containing portions that were "inaudible" were actually complete pages. There were no omissions in the *voir dire* section of the record of any of the potential jurors that were later preempted by the State.

*Objections:*

Defendant asserts that several bench conferences were not recorded and there were omissions in the record during the discussions of the objections that were recorded. Therefore, the correctness of the trial court's ruling cannot be ascertained.

Regarding the failure to record the bench conferences, the supreme court has stated:

> This court has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.Code Crim. Proc. art. 843. *State v. Hoffman*, 98-3118, p. (La.4/11/00), 768 So.2d 542, 586. However, in *Hoffman*, we interpreted

13

> Article 843's requirement that "objections" and "arguments" be recorded as normally applying only to objections made in open court and the arguments of counsel in closing, because only these objections and arguments rise to a level of materiality sufficient to invoke Article 843. *Id.* We further determined in that case that, similarly, Art. I, § 19's mandate that "evidence" be recorded does not encompass bench conferences; at least, not ones that do not satisfy the materiality requirements of La.Code Crim. Proc. art. 843. *Id.* at 587.

*State v. Deruise*, 98-541, pp. 14-15 (La. 4/3/01), 802 So.2d 1224, 1236, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283 (2001).

A review of the record shows that several of the objections made by both Defendant and the State were recorded. However, in brief, Defendant points to four incidences where objections were made and the bench conferences concerning the objections were not recorded.

The first two objections made by defense counsel concerned whether Detective Zerangue would be allowed to draw a diagram of the headquarters of the St. James Parish Sheriff's Office where the victim had gone to view a lime green Cadillac. The first objection was made by defense counsel because the State did not lay a foundation. The second objection made by defense counsel was based on relevancy of the detective's rendition of the layout of the office. Defendant had maintained that the victim had seen him when he was being held in the St. James Parish Sheriff's Office on an unrelated charge when the victim went to identify the vehicle, and that was how he was able to identify Defendant in the photographic lineup, not because he was the man who approached him with a gun in the school parking lot. The State laid the foundation requested by defense counsel and Detective Zerangue was allowed to draw the diagram for the jury's benefit. In brief, Defendant states that Detective Zerangue testified that "the layout of the building was such that it was possible" that the victim could have seen Defendant. While the above statement is a

14

mischaracterization of the detective's testimony, she did testify there were various routes from the front door of the headquarters to the area where the vehicle was impounded, and one route passed where Defendant was being held at the time. Accordingly, we find that the fact that the bench conferences were not recorded did not prejudice Defendant's case.

The third objection made by defense counsel concerned the testimony of Eric Villavaso, a detective with Ascension Parish Sheriff's Office, who had prepared the photographic lineup for the victim. The State, on redirect examination, was questioning him regarding whether it was proper procedure that the victim had first been called to St. James Parish Sheriff's Office to identify the vehicle before he was called to see a photographic lineup. Defense counsel objected, stating that the detective was "not in a position to testify as to what St. James procedures may be." Following this objection, there was a bench conference off the record. Following the conference, defense counsel withdrew her objection. In brief, Defendant does not argue how the absence of a record of the bench conference on this issue was material to Defendant's case and how he was prejudiced by the omission.

Finally, the last unrecorded bench conference concerned the handwritten notes from which Detective Villavaso had prepared his report of what the victim had told him regarding the offense. This bench conference was recorded. However, there were several "inaudible" between counsels. We find that the substance of the arguments is discernible from the content and extent of the conversation. Defense counsel contended that the notes might contain exculpatory evidence and the State argued that the notes constituted hearsay. However, the State had no problem with turning over the notes to defense counsel, but the detective did not have the notes in

15

his immediate possession. The detective, when asked if he had "personal recollection of what was in your notes?" He responded, "What I put in the report."

Even though in *Boatner* there were more than two hundred and ten instances of "inaudibles" throughout the record, the supreme court found Boatner failed to show that he suffered prejudice because of the omissions. The supreme court noted that it could be determined what had been said by a reading of the entire transcript. The supreme court stated:

> The crucial issue is not the amount or number of omissions but rather whether the omissions are material and caused prejudice to the defendant. The determination of whether the omissions are material must be made on a case by case basis. The critical inquiry is whether the defendant's right to judicial review guaranteed by La. Const. art. 1, § 19 can be performed or is the record so inadequate that the defendant's constitutional right to judicial review is prejudiced. Defendant must establish that he was prejudiced by the missing portions of the transcript. Despite the state of the record, defendant has failed to demonstrate any reasonable likelihood that he suffered prejudice resulting from the inadequacy of the record.

*Boatner,* 861 So.2d at 153.

Here, unlike *Boatner*, the "inaudible" portions of the transcript are minimal, perhaps less than two dozen throughout the entire transcript. As for the bench conferences not recorded, we find that the issues were not material to Defendant's case and, as demonstrated, Defendant failed to show that he was prejudiced by the omissions.

*Motions to suppress:*

Defendant asserts that the record is void of any transcripts of a hearing on three motions to suppress filed February 10, 2006. Defendant filed a "Motion to Suppress Confession and/or Inculpatory Statements," "Motion to Suppress the Evidence," and "Motion to Suppress the Identification" on February 10, 2006, along with several

discovery motions. Hearing was scheduled for February 21, 2006. Specifically, Defendant notes there was a hearing held on April 17, 2006, on a motion to suppress the lineup, which was denied. A written motion to suppress the lineup is not in the record. We note that all these motions were filed when Defendant's case was still in Ascension Parish and the pleadings indicate there were several other charges included. The Ascension Parish District Court's minute entry for February 21, 2006, indicates all the above filed motions (except for the motion to suppress the photographic lineup) were addressed and the trial court ordered the State to provide discovery pertinent to the motions.

We further note that there were no statements or confessions attributed to Defendant submitted at trial. As for the hearing on Defendant's motion to suppress the lineup, while no transcript of the hearing was included in the record, it was Defendant's responsibility to be sure all necessary hearings for appellate review were included in the record. A Motion for Appeal and Designation of Record was filed on December 5, 2007, in which Defendant designated "the entire transcript of each hearing herein and all of the pleading for inclusion in the appellate record." On July 29, 2008, appellate counsel moved to suspend briefing for the reason the record was inadequate, yet did not ask for the transcript of the suppression hearing on the motion to suppress the photographic lineup.

Furthermore, the victim, who testified at the suppression hearing also testified at trial, as did Detective Villavaso, who prepared the photographic lineup and presented it to the victim, and while defense counsel questioned both the victim and Detective Villavaso extensively regarding the photographic lineup, he had no objection to the admission of the photographic lineup at trial. As such, we find that

17

the record was sufficient for appellate counsel to address the issue of the denial of the motion to suppress the lineup on appeal. Accordingly, the omission of the hearing transcript was not prejudicial to Defendant's case.

Finally, Defendant argues:

> During the hearing on the Motion for New Trial, defense counsel referenced a Motion for Mistrial made by defendant during trial based upon possible sequestration violations. This is the only reference to this motion or the court's ruling in the record. The lack of a transcript effectively thwarts appellate review.

A review of the trial transcript shows there was no motion for a mistrial based on a sequestration violation entered into the record. If there was, it was defense counsel's responsibility to ensure that any motion for a mistrial be recorded. This is not an issue of an incomplete record. Accordingly, it is of no consequence to the allegation that the record is inadequate for appellate review.

We find that the omissions complained about by Defendant are minimal and insignificant and not material to his appellate review. Moreover, Defendant has failed to demonstrate that he suffers prejudice resulting from the alleged inadequacy of the record. There is no merit to this allegation.

## ASSIGNMENT OF ERROR NUMBER 3:

Defendant argues that the trial court erred when it denied his motion for a new trial. Defendant argues "newly discovered evidence" that would have most certainly changed the verdict at trial. "Specifically, a lime green Cadillac had been located by defense counsel that matched the description given by McKneely."

Louisiana Code of Criminal Procedure Article 851, in pertinent part, provides:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

18

The court, on motion of the defendant, shall grant a new trial whenever:

. . . .

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty[.]

Defendant was initially suspected as being the perpetrator of the current offense because he was in possession of a vehicle very similar to the vehicle described by the victim and his former wife as being the vehicle the offender exited from prior to the offense.   At the hearing on the motion for a new trial, defense counsel did not present newly discovered evidence.  Rather, defense counsel told the trial court:

> I'm merely laying out for record purposes at this time that the sister, Dawn Stipe, named on the second to last page, [Motion for New Trial, r. p. 138] has seen another vehicle on the highway. Has been unable to get the identifiers of that vehicle which she thought at first glance was Terrell's car. That's how close of a resemblance. I have been myself personally in response to information as well as sending an investigator to the refinery, Colonial sugar refinery in Gramercy looking in the employee parking lot for a vehicle that fit the exact description which I have never been able to locate that particular vehicle at that particular location and I've an investigator go there and try to interview security who was unwilling and unable, in a position to disclose that information.
>
> . . . .
>
> What I am trying to do is preserve and protect a record because when this vehicle and this person is found six months from now, a year from now, two years from now, the State's going to make the other side of the argument. They're going to say, well, Mr. Sauviac knew that information on the day he stood before you with the new trial and based upon that judge, it should have been done and raised then. And I'm trying to make it absolutely crystal clear as to where that issue stands now because I have strong feelings as to where this thing is going to go in the future when that person and/or vehicle is ultimately recovered.

19

Louisiana Code of Criminal Procedure Article 854 provides that a motion for a new trial based on newly discovered evidence must show:

(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;

(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;

(3) The facts which the witnesses or evidence will establish; and

(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.

Defense counsel agreed with the trial court that the evidence on this issue of the motion for new trial was insufficient. However, he put into evidence a picture of a lime green Cadillac that he had located. He stated, however, the owner had told him the car had just been painted lime green. Although the State objected to the admission of the picture, the trial court allowed the evidence to be admitted.

Accordingly, there is no merit to this assignment.

**ASSIGNMENT OF ERROR NUMBER 4:**

Defendant argues that the sentence is excessive under the circumstances of the case. He was convicted of attempted second degree kidnapping.

The punishment for the offense of second degree kidnapping is no less than five years and no more than forty years at hard labor, with at least two years of the sentence imposed without benefit of parole, probation, or suspension of sentence. La.R.S. 14:44.1(C). The attempt statute provides that, in Defendant's case, "he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted." La.R.S. 14:

20

27(E). Accordingly, Defendant was exposed to a sentencing range of no less than two and one-half years and no more than twenty years at hard labor, with at least one year to be served without the benefit of parole, probation, or suspension of sentence. Defendant was ordered to serve one-half of the potential maximum sentence.

He argues that the trial court failed to adequately consider the factors of La.Code Crim.P. art. 894.1.

In its REASONS FOR SENTENCE, other than summarizing the testimony of the victim at trial, the trial court stated:

> This is the case of a thirty (30) year old man officially classified as a first felony offender who, on July 28, 2006, was found to be guilty by a twelve person jury of Attempted Second Degree Kidnapping. Sentencing was deferred and a Pre-sentence Investigation Report was ordered and is filed herein and has been made available to the defendant and his counsel and is attached hereto and made a part hereof by reference.

In *State v. Hicks,* 07-726, pp. 2-3 (La.App. 3 Cir. 12/5/07), 977 So.2d 1008, 1010, regarding the standard for reviewing excessive sentence claims, this court stated:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook,* 95-2784

21

(La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (alteration in original). *See also State v. Sigue,* 06-527 (La.App. 3 Cir. 9/27/06), 940 So.2d 812, *writ denied,* 06-2963 (La.9/28/07), 964 So.2d 354.

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith,* 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

As noted, the trial court received a pre-sentence investigation report, which advised the trial court on factors such as Defendant's personal history and past criminal activity, including current pending charges. Shortly after the current offense, while considered a first time felony offender at sentencing, Defendant had been arrested on several other unrelated charges. In *Colbert*, 990 So.2d 76, the offender, convicted of attempted second degree kidnapping, was sentenced to twenty years imprisonment. However, the kidnapping occurred after he shot and killed the victim's companion and dragged her out of his car and forced her into her car with

the intent to kidnap her.  In *State v. Gatti*, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, *writ denied*, 05-2394 (La. 4/17/06), 926 So.2d 511, the offender received twenty years imprisonment on the conviction for attempted second degree kidnapping.  The sentence was ordered to be served consecutively, however, with several other convictions that resulted from a crime spree which included two counts of attempted second degree murder.

In the current case, we cannot say the trial court abused its vast discretion when it sentenced Defendant to ten years imprisonment.  Defendant used a firearm in his attempt to kidnap the victim.  Considering the facts of the case, compared to the facts of other somewhat similar cases, the sentence does not shock this court's sense of justice. Thus, we find that there is no merit to this assignment of error.

## CONCLUSION:

Defendant's conviction and sentence is affirmed.

**AFFIRMED.**