ROLAND L. BELSOME, Judge.
liOn July 4, 2009 around 6:00 p.m., Melvin’s Bar, owned and operated by Scott Hoerner, located on 2112 St. Claude Avenue, was robbed at gun point. Matthew Morris, the bartender, and three patrons were in the bar when the robbery occurred. Mr. Morris complied with the robber’s demands for the money. Shortly thereafter, Mr. Morris and the three patrons were ordered into the bathroom of the bar. Once the perpetrator fled the premises, Mr. Morris called 911 to report the incident; and the three patrons fled the scene.
As he waited for the police to arrive, Mr. Morris viewed the surveillance video from the camera that overlooked the bar. Later, on July 5, 2009, he made an identification of the robber from the photos shown to him by a New Orleans Police Department officer. He signed the back of the photo of Kerry Paul as the individual he observed rob the bar the previous day.
Defendant Kerry Paul was charged by bill of information on September 28, 2009 with two counts of armed robbery in violation of La. R.S. 14:64. Defendant was tried by a twelve-person jury and found guilty as charged as to count two for armed robbery, but was deadlocked as to the first count resulting in a mistrial on 12that one count.[1] The trial court sentenced the defendant as a third felony offender to seventy years at hard labor with credit for time served. Defendant filed motion to reconsider sentence, which the trial court denied. Defendant appeals his conviction and sentence for armed robbery. For the reasons that follow, we affirm.
On appeal, Mr. Perry sets forth the following assignments of error:
1. The trial court erred by not allowing the defendant to baekstrike a previously accepted juror and fill the vacancy with a previously stricken juror;
2. The evidence is insufficient to support the conviction;
3. The trial court erred by prohibiting the defendant from presenting a complete defense at trial;
4. The trial court erred in prohibiting defense counsel from conducting a full cross-examination of the State’s witnesses;
5. The trial court erred by denying the defense Motion for Mistrial; and
6. The sentence is excessive, and the trial court erred in the denial of the motion to reconsider sentence.
In his first assignment, the defendant argues that the trial court erred by not allowing defense counsel to baekstrike prospective jurors during the jury selection process. Backstriking of jurors is authorized by La.C.Cr.P. art. 799.1, which provides:
Notwithstanding any other provision of law to the contrary, and specifically *1194 notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaininy peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.
|sLa.C.Cr. P. art. 799.1. (emphasis added).
In this case, the transcript clearly indicates that after exhausting his preemptory challenges, the defense sought to trade out two jurors. The trial court denied defense’s plea to allow him to alter the jury line-up because he made a mistake. The trial court allowed defense counsel to put his objection on the record. Thereafter, the trial court judge stated:
Okay. I mean, I’m going to put that on the record. But I understand what you’re saying. But, as far as the sheets go, I went by your sheet and I even gave you an opportunity after you selected the people to go ahead and exercise your 12th strike, even if you wanted to back strike to the prior jury panel.
Although the assignment of error is styled as a backstrike issue, it does not fit within the statutory limits of La.C.Cr.P. art. 799.1. In the instant case, once all jurors were selected and preemptory exceptions were exhausted, defense counsel sought to switch two jurors arguing that he inadvertently struck Julie Alexander, when he meant to strike Callender Herman, and the trial court refused to allow him to correct his error. Since there is no legal authority that allows for such a maneuver, we cannot find that the trial court erred by not allowing the substitution.
As to his second assignment of error, Mr. Paul argues that the evidence presented at trial was insufficient to uphold a conviction for armed robbery. Specifically, he argues that the evidence presented at trial was insufficient to identify him as the perpetrator of the armed robbery.
In State v. Stewart, 2004-2219, p. 6 (La. App. 4 Cir. 6/29/05), 909 So.2d 636, 639, this Court discussed the sufficiency standard to be employed when a defendant disputes proof of identity:
When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virginia [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ]. The reviewing court must examine the reliability of an | ^identification according to the test set out in Manson v. Brathwaite, (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
(emphasis added), (citations omitted). See also State v. Mathieu, 2007-0204 (La.App. 4 Cir. 2/27/08), 980 So.2d 716.
A positive identification by only one witness is sufficient to support a conviction. State v. Neal, 2000-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658. A victim’s or witness’ testimony alone is suffi *1195 cient to support the verdict, if the Manson v. Brathwaite[2] factors are satisfied. At trial, the State produced identification testimony from Matthew Morris, Anthony Groves, Officer Armond Clavo, and Scott Hoerner.
Mr. Morris was tending the bar at Melvin’s Bar on the day of the robbery. He testified that he “made eye contact” and got “a good look” at the gunman’s face for approximately twenty to thirty seconds. He estimated that he interacted with the gunman for two to three minutes during the course of the robbery, and that the gunman stood two to three feet away from him with the most distance between the two men at any time was ten feet. Mr. Morris picked the defendant out of a photographic lineup within “less than a minute” and also identified him at trial and was “100 percent certain” that the defendant was the person who robbed him.
Mr. Groves testified that he knew the defendant as one of his steak customers whom he had met on “several” and “quite a few” occasions. Further, Mr. Groves recognized the defendant as the robber “within three seconds” of|fiviewing the surveillance footage. He also identified the defendant in court as the robber on the surveillance footage.
Likewise, Officer Clavo “immediately” recognized the defendant by name as the robber depicted in the photo made from the surveillance video. Officer Clavo was familiar with the 1900 block of Pauger Street where the gunman was identified as living. Officer Clavo’s family was from that portion of the First District, and he patrolled that area on a regular basis since his assignment to the First District in 2002. Officer Clavo also viewed the surveillance video and had no doubt that the robber depicted therein was the defendant.
Mr. Hoerner, the owner of Melvin’s Bar, testified that he learned of the robbery from Matthew Morris. Upon arriving at the bar, Mr. Hoerner made a copy of the surveillance video for the police. He also made still photos of the gunman as depicted on the surveillance tape.
Considering the Manson v. Brathwaite factors in relation to the testimony given by the State’s witnesses, we find sufficient evidence was presented to the jury that the defendant was the perpetrator of the armed robbery and that there was no substantial likelihood of misidentification.
In his third and fourth assignments, the defendant maintains that he was prohibited from presenting a complete defense at trial as-a result of the trial court refusing to allow him to offer impeachment evidence as to one witness, Officer Clavo’s and in limiting his cross-examination of another witness, Mr. Groves.
La. C.E. art. 609.1(A) provides that in a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to certain limitations. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is | (¡permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal. La. C.E. art. 609.1(B). Further, La. C.E. art. 607(C) allows a witness’ credibility to be attacked intrinsically by examining him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.

*1196
Officer Clavo

The defendant sought to impeach Officer Clavo through introduction of evidence of his alleged six day suspension from the New Orleans Police Department in 2005 for untruthfulness relating to a 2004 incident. The record herein indicates that the trial judge specifically found that Officer Clavo was not disciplined for untruthfulness when she reviewed his record. The trial judge noted that a complaint was made against Officer Clavo and an investigation was conducted; however, no punishment was given in response to the allegations made (use of force during arrest); only a letter of reprimand was issued. The alleged truthfulness aspect of the incident related to Officer Clavo’s claim that he reported the allegations immediately following the incident, as required by the department. The outcome of the complaint was that the truthfulness violation was “non-sustained.” Thus, we do not find the trial court abused its discretion by not allowing the defendant to use Officer Cla-vo’s disciplinary record in an effort to impeach him. See State v. Pleasant, 2010-1533 (La.App. 4 Cir. 5/18/11), 66 So.3d 51; State v. Thompson, 2008-0874, p. 7 (La. App. 4 Cir. 4/8/09), 10 So.3d 851, 855 writ denied, 2009-1044 (La.1/29/10), 25 So.3d 827.
| rjAnthony Groves
The defendant also contends that the trial court’s ruling curtailed his ability to ascertain the nature of the pending criminal charge against the State’s witness, Mr. Groves, was a violation of his right to fully cross-examine the witness.
At trial, the defendant sought to impeach Mr. Groves via his criminal record. Defense counsel questioned Mr. Groves about convictions as well as criminal charges pending against him. The defense was able to elicit whether Mr. Groves had any pending charges but was prohibited from asking him the nature of the charges. Although every witness, by testifying, subjects himself to examination relative to his criminal convictions, no inquiry is permitted into matters for which there has only been an arrest. La. C.E. art. 609.1.
Nevertheless, in support of his argument, the defendant cites State v. Vale, 95-1230 (La.1/26/96), 666 So.2d 1070, 1072, for the proposition that the possibility that the State may have some leverage over a witness due to that witness’s pending criminal charges is recognized as a valid area of cross-examination. A witness’ hope or knowledge that he will receive leniency from the State in exchange for his testimony is highly relevant to establish bias or interest. State v. Bowie, 2000-3344, p. 10 (La.4/30/02), 813 So.2d 377, 385. A witness’ bias or interest may arise from arrests, pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the State regarding the conduct. Vale, 95-1230 p. 4, 666 So.2d at 1072.
The record indicates that prior to trial, the prosecutor notified the trial court and defense counsel that Mr. Groves had a pending charge against him in East IsBaton Rouge Parish.[3] In addition, in an exchange with defense counsel and the trial judge, the prosecutor noted for the record that she had not made any promises to Mr. Groves to secure his testimony at trial and what Mr. Groves could expect in exchange for his cooperation.
*1197 During direct examination, the prosecutor elicited Mr. Groves’ criminal convictions, which were possession of cocaine in 1990; illegal use of a credit card in 1998; theft in 1988; receiving stolen goods and theft in 2005; theft and illegal use of a motor vehicle in 2007, and theft in 2009. Mr. Groves emphatically denied receiving promises or inducements in order to testify. He agreed that the prosecutor told him she would notify the East Baton Rouge District Attorney’s Office that he cooperated and testified in this matter; however, the prosecutor told him that after he had decided to testify. The testimony was sufficient to develop any bias on the part of Mr. Groves. We do not find that the trial court abused its discretion in limiting the cross-examination of Mr. Groves.
As to his fifth assignment of error, the defendant argues that the trial judge committed reversible error in not granting a mistrial based on the statement made by the prosecutor during closing rebuttal argument, namely that the defendant “does have a defined lower lip, we haven’t had the opportunity to hear him speak”... “But who’s to say”. The defendant argues that this improperly referred to his failure to testify in his own defense.
A mistrial may be granted for references made to a defendant’s failure to testify under two separate criminal code articles. La. C. Cr. P. art. 770 provides for a mandatory mistrial in certain instances, and states:
1 nUpon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(3) The failure of the defendant to testify in his own defense ...
Thus, upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the district attorney, during the trial or in argument, refers directly or indirectly to the failure of the defendant to testify in his own defense. La. C. Cr. P. art. 770(3). This code article protects the defendant’s Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Mitchell, 2000-1399 (La.02/21/01), 779 So.2d 698. “To warrant a mistrial, the inference must be plain that the remark was intended to bring to the jury’s attention the failure of the defendant to testify.” State v. Stephenson, 412 So.2d 553, 557 (La.1982).
The trial judge has broad discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981). When testing the permissibility of the statement and whether such was direct or indirect, the context of the statement is also crucial. La. C. Cr. P. art. 770 (requiring a mandatory mistrial) only applies to statements referring to a defendant’s failure to testify. State v. Smith, 336 So.2d 867 (La.1976). As used in art. 770, the word “testify” means to give testimony under oath at the trial. Id. at 868.
One of the issues at trial in this case was whether the perpetrator had gold teeth. While the defendant’s brother and Officer Clavo testified that the defendant has always had gold teeth, neither of the victims nor did other State’s witnesses get a good enough look at the defendant’s mouth to say whether the defendant had |ingold teeth. In the instant case, the defense *1198 argued that the defendant had numerous gold teeth and no one that identified him as the perpetrator recalled seeing gold teeth. Thus, there was a misidentification. The reference made in closing arguments, taken in context, referred to how exposed the gold teeth are when the defendant speaks and the ability for the teeth to be clearly observed during the commission of the crime. There is nothing in the record to suggest that the statement was meant to draw the jury’s attention to the defendant’s failure to testify. Accordingly, we find that the comment did not warrant the granting of a mistrial.
ASSIGNMENT OF ERROR # 6
In a final assignment, the defendant argues that his sentence is excessive. In conjunction with his argument, the defendant argues that the trial judge failed to state reasons for sentencing the defendant as required by La.C.Cr. P. art. 894.1.
Article I, section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. La. Const. art. I, 20; State v. Landry, 2003-1671, p. 7 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239-1240 (sentence is constitutionally excessive if it is grossly out of proportion to the severity of the crime and is nothing more than purposeless imposition of pain and suffering). A trial judge has broad discretion in imposition of sentences within statutory limits but shall, pursuant to La. C.Cr.P. art. 894,1(C), “state for the record the considerations taken into account and the factual basis therefore in imposing sentence.” La.C.Cr.P. art. 894.1(C). Even a sentence within the statutory limit may violate a defendant’s constitutional right against excessive punishment, Id.; State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), and, accordingly, imposition of |na sentence, even those within the statutory limit, may be reviewed on appeal. State v. Caston, 477 So.2d 868 (La.App. 4 Cir.1985).
Although rigid compliance with Article 894.1 has been deemed unnecessary where the record clearly shows an adequate factual basis for the sentence imposed, the record should reflect the considerations taken into account by the trial court in determining the sentence to aid the reviewing court in determining whether the sentence is warranted in light of the particular circumstances of the case. See State v. Quebedeaux, 424 So.2d 1009 (1982).
The maximum penalty for armed robbery is ninety-nine years imprisonment at hard labor. La. R.S. 14:64. The defendant in this case was sentenced as a third felony offender under the Habitual Offender Law (La. R.S. 15:529.1(A)(3)(a)), which calls for a sentence of “determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.” Accordingly, the mandatory sentencing range available to defendant as a multiple offender was sixty-six years to one hundred ninety-eight years at hard labor. The defendant received a sentence of seventy years, only four years longer than the minimum sentence allowed.
The minimum sentences imposed by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The circumstances in which the presumption is rebutted and a departure is warranted are rare. State v. Lindsey, 99-3302, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343. To rebut the presumption, a defendant must clearly and convincingly show he is exceptional by establishing that due to “unusual circumstances, the defendant is a victim of *1199 the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the | ^gravity of the offense, and the circumstances of the case.” Id. Contrary to this defendant’s contention, this is not such a rare case. He has failed to present any evidence to rebut the presumption that his sentence is constitutional, especially when considering that a seventy year sentence was the sentence he bargained for when he pled guilty to being a multiple offender. We, therefore, find the sentence imposed in this case is not excessive.

CONCLUSION

For the reasons discussed Kerry Paul’s conviction and sentence are affirmed.
AFFIRMED

. Count one related to an armed robbery at the John Bar.

. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

. On July 25, 2011, the defendant filed a motion to supplement the record with Anthony Groves’ criminal record. The Motion to Supplement the Record is denied.