PAUL A. BONIN, Judge.
11 Ricky Small appeals his convictions for the attempted first degree murders of Ti-jai Andrews and Lyndon Henry. Claiming that the prosecution failed to exclude every reasonable possibility that he was misidentified as one of the perpetrators, Mr. Small first seeks a Jackson v. Virginia review for the sufficiency of the evidence on that limited issue. Next, should his argument for acquittal on appeal fail, Mr. Small contends that inflammatory remarks made by the prosecutor during rebuttal closing argument entitle him to a new trial either because his trial attorney provided ineffective assistance by failing to move for a mistrial or because the trial judge erred in refusing to admonish the jury despite his attorney’s specific request.
Mr. Small also appeals the sentences imposed upon him. The trial judge, following a hearing under the Habitual Offender Law, vacated Mr. Small’s two concurrent ten year sentences and imposed two concurrent twenty-five year sentences despite the prosecution only seeking a multiple bill on one count. Mr. Small moved for a deviation in his sentencing below the statutorily-mandated minimum sentence, which the trial judge, expressing his view that he lacked legal authority, refused.
| {¡With respect to both his convictions and sentences, Mr. Small assigns as additional error that the appellate record is incomplete, thus preventing our full judicial review to which he is entitled by law. He itemized the portions of the record which were not included at the time of its lodging.
Based upon our Jackson v. Virginia review, we find that, viewing all of the evi *1278 dence in a light most favorable to the prosecution, any rational fact-finder could have found beyond a reasonable doubt that Mr. Small was identified as one of the perpetrators of both attempted murders. We find that Mr. Small’s trial counsel’s assistance was not deficient and thus not ineffective. And, only due to the trial judge’s vigilance, oversight, and quick intervention to terminate early the prosecutor’s improper and suggestive remarks, we find no error in his refusal to admonish the jury under the facts of this ease. We also find that, with respect to his convictions, those still-missing portions of the record identified by Mr. Small are unnecessary to conduct a full appellate review. We thus affirm Mr. Small’s convictions.[1]
With respect to the sentences imposed upon Mr. Small, however, we have detected an error patent regarding the enhancement of the penalties on both counts. We thus conclude that it is necessary that we vacate both sentences imposed under the Habitual Offender Law and remand the matter to the district court for re-sentencing. Also, because the trial judge expressed an erroneous view of his sentencing authority, we direct on remand that he consider and decide Mr. Small’s motion for downward departure from the legislatively-mandated minimum | .^sentence, reserving unto the parties the right to appeal any adverse rulings. We thus vacate the sentences and remand for re-sentencing.
We explain our decision in greater detail in the following parts.
I
We begin our explanation by considering Mr. Small’s first argument, the only made by appellate counsel, that the evidence is insufficient to negate any reasonable probability of misidentification such that an element essential to his conviction is missing which mandates his acquittal. See State v. Woodfork, 99-0859, pp. 4-5 (La.App. 4 Cir. 5/17/00), 764 So.2d 132, 134-35. See also State v. Edwards, 97-1797, p. 12 (La.7/2/99), 750 So.2d 893, 902 ('When identity is disputed, the state must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt.”).
Here, just as in Woodfork and Edwards, Mr. Small does not contest whether the essential elements of the crime charged were proven beyond a reasonable doubt, but instead, by his alibi defense, has made identity “a key issue at trial.” Edwards, 97-1797, p. 12, 750 So.2d at 902; Woodfork, 99-0859, pp. 4-5, 764 So.2d at 134-35. In reviewing for the sufficiency of evidence under the specific claim that mis-identification had not been negated by the prosecution, we apply the general rules for sufficiency review set forth in Jackson v. Virginia, which announced a federal constitutional rule or standard of review, to guarantee that a fact-finder had applied the correct standard of proof. 443 U.S. 307, 316-18, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). And we also apply the particular criteria for evaluating the reliability of 1 identification evidence set out in Manson v. Brathwaite.[2] See State v. Paul, 11-0252, pp. 3-4 (La.App. 4 Cir. 4/18/12), 90 So.3d 1191, 1194; State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639.
A
Before considering the evidence of the identification of Mr. Small at his trial, we *1279 detail the limited factual review both authorized and required under Jackson v. Virginia. The “critical inquiry” is “to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” Jackson, 443 U.S. at 318, 99 S.Ct. 2781. “But this inquiry does not require a court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Id. at 318-19, 99 S.Ct. 2781 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)) (bold in original). “Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781 (emphasis in original).
The fact-finder’s “role as weigher of the evidence” is thus “preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.” Id. (emphasis in original). Importantly, the standard “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Id.
And in applying this general standard of constitutional review, we emphasize that we determine whether “any” — and not “every” — rational trier of fact could have found proof of all the essential elements, including the defendant’s | identity as the perpetrator of the crime, because “|j’]ury verdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt....” Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).
B
Although there were two victims, Tijai Andrews, one of the victims, was the only witness to identify Mr. Small as the perpetrator. A positive identification by only one witness, however, can be sufficient to support a conviction. See State v. Neal, 00-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658.
Mr. Andrews along with Lyndon Henry, the other victim, arranged to meet Jerome Colbert at a location in the Mid-City neighborhood of New Orleans in order to purchase marijuana. The victims arrived in a rental car driven by Mr. Andrews. When Mr. Colbert, known to Mr. Andrews as “Romey,” arrived in a black Acura, Mr. Andrews joined him in the Acura while Mr. Henry remained in the rental car. Suddenly shots were fired from outside of the cars. As Mr. Andrews yelled for Mr. Colbert to drive away, Mr. Colbert pulled a weapon on Mr. Andrews, who then escaped from the vehicle.
During the attack, both victims were shot multiple times. Mr. Henry was able to flee in the rental car and drove himself to a hospital emergency room. He informed the investigating detectives that he was unable to identify anyone as a perpetrator.
Quite a few neighbors telephoned the 9-1-1 call center and reported hearing numerous shots fired. Officer Nigel Badeoo was the first police officer on the scene. At that time, neither vehicle was at the scene, and Mr. Andrews, shot eleven times, was lying on the ground bleeding. Officer Badeoo knew and | ^recognized Mr. Andrews. They rode together in the EMS vehicle during which time Mr. Andrews told Officer Badeoo that “Rick” and “Ro-mey” were the shooters. Mr. Andrews later identified the men again in the hospital to Detective Christopher Harris, the lead investigator. The detective prepared *1280 two six-person photographic line-ups, each set containing a photograph of only one of the identified perpetrators; Mr. Andrews selected the pictures of Mr. Small and Mr. Colbert in the photo line-ups as the perpetrators.
Mr. Andrews testified that he had known Mr. Small for ten to twelve years. He also told the investigators that Mr. Colbert had said that he would be in Mr. Small’s girlfriend’s car. Mr. Andrews knew that Mr. Small’s girlfriend had a black Acura.
This very basic identification of Mr. Small was not unchallenged, however. Mr. Small’s lawyers drew the jury’s attention to a statement that Mr. Andrews reportedly made to the police that a person with dreadlocks — which Mr. Small did not have — had attacked from an alleyway. Mr. Andrews testified that he did not remember making such a statement to the police. Mr. Small’s lawyers also questioned Mr. Andrews about prior inconsistent testimony given during a pretrial hearing on motions in which Mr. Andrews claimed to have known Mr. Small’s last name and to have furnished it to investigators because, during his trial testimony, Mr. Andrews stated that he only knew Mr. Small as “Rick” or “Ricky” and did not know his last name.
Mr. Small’s lawyers also challenged Mr. Andrews concerning his report to the police that the Acura had tinted windows. A neighbor who had called 9-1-1 also described a car with tinted windows. Mr. Small’s lawyers produced photographs of Mr. Small and his girlfriend in the Acura, and the photographs |7showed that the windows were not tinted. Mr. Andrews testified that he did not recall telling the police that the windows were tinted because the scene was dark. A private investigator produced photographs of the scene to demonstrate that the area was sufficiently well-lit to determine whether a vehicle’s windows were tinted.
Mr. Small’s testimony contradicted Mr. Andrews’ testimony on several points. Mr. Small testified that he had only met Mr. Andrews once or twice and that occasionally they would acknowledge each other. Mr. Small also testified that he was more familiar with Mr. Colbert than Mr. Andrews, but that Mr. Colbert was never allowed to use his girlfriend’s car.
The prosecution produced evidence that some months before the shootings, Mr. Small had received a traffic citation while operating his girlfriend’s Acura. The defense countered that Mr. Small did not receive a citation for tinted windows, to which the prosecution rejoined that the citing officer may not have had the necessary equipment to measure the tint.
The defense sought to impeach Mr. Andrews’ testimony with his prior convictions for possession of codeine in Orleans and Jefferson Parishes in 2008. See La. C.E. art. 609.1 A. Mr. Small, in his testimony, admitted that he too had prior convictions for possession of cocaine in 2003 and possession of marijuana in 2006.
Mr. Small testified that he was in Me-tairie watching an NBA playoff game at the time of the shooting in the company of his brother, who also testified and corroborated the alibi.
IsThus, it is clear that the jury had many conflicts in the testimony to resolve in order to find beyond a reasonable doubt that Mr. Small was one of the two perpetrators of the attempted murders.
C
As noted in the introduction to this Part, in cases in which the defendant contends that the prosecution has not negated the possibility of misidentification, we resort to an evaluation of the reliability fac *1281 tors set forth in Manson v. Brathwaite. See Paul, 11-0252, pp. 3-4, 90 So.3d at 1194; Stewart, 04-2219, p. 6, 909 So.2d at 639. The five Manson v. Brathwaite factors include: (1) the opportunity of the witness to view the perpetrator at the time of the crime, (2) the witness’ degree of attention, (3) the accuracy of the witness’ prior description of the perpetrator, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. See 432 U.S. at 114-16, 97 S.Ct. 2243. But, because we consider these factors for a purpose different from that which they serve in Manson v. Brathwaite, some of the factors may have little or no applicability.[3]
Here, the victim and the person identified as the perpetrator at least knew each other. They were not strangers to each other. The defense itself established by the introduction of a street-scene photograph that the lighting would have been adequate for Mr. Andrews to recognize Mr. Small despite the shooting occurring at about 8:30 P.M. There was no out-of-court confrontation during which Mr. Andrews identified Mr. Small, but Mr. Andrews did furnish the names “Rick” and “Romey” to Officer Badeoo in the ambulance on the way to the emergency room. |flHe also correctly selected Mr. Small’s photograph from among six photographs presented to him. At no point in time did Mr. Andrews express any doubt or uncertainty that the perpetrators were Mr. Small and Mr. Colbert.
We contrast the evidence here with that in Woodfork, a case decided by us and to which Mr. Small cites. In Woodfork, we concluded that any rational juror would have had a reasonable doubt about the victim’s identification of the defendant as the perpetrator, and we reversed his conviction and acquitted him.[4] 99-0859, p. 9, 764 So.2d at 137. But the victim in Wood-fork was not acquainted with the perpetrator and had only viewed him for a matter of seconds. 99-0859, pp. 5-6, 764 So.2d at 135. Three months later the victim was introduced to the defendant but did not recognize him. Id., 99-0859, p. 7, 764 So.2d at 135. Not until further interaction with him did she become convinced that the defendant was her attacker, reported him to the police, and “[n]ot surprisingly” selected him from a photographic line-up. Id., 99-0859, p. 7, 764 So.2d at 136. Moreover, the defendant’s alibi was corroborated by “two independent witnesses.” Id.
Here, we cannot displace the jury as the fact-finder. The jury weighed the conflicting and contradictory evidence bearing on the issue of Mr. Andrews’s identification of Mr. Small as the perpetrator of these crimes. We preserve their resolution by viewing all of the evidence in the light most favorable to the prosecution. And, as we earlier suggested, the testimony of Mr. Andrews — standing alone — is sufficient for any rational fact-finder to find that Mr. Small was Unidentified beyond a reasonable doubt as the perpetrator. See Neal, 00-0674, p. 11, 796 So.2d at 658; State in the Interest of C.D., 11-1701, p. 6 (La.7/2/12), 93 So.3d 1272, 1276 (per curiam) (“[ejyewitness testimony alone is usually sufficient in the mill run of cases”). See also State v. Campbell, 06-0286, p. 93 (La.5/21/08), 983 So.2d 810, 869 (“None of *1282 these witnesses was attempting to identify a stranger that they had seen only for the short time of the robbery and shooting.”); State ex rel. W.H., 10-1418, p. 9 (La.App. 4 Cir. 4/6/11), 62 So.3d 839, 846 (“[TJhese inconsistencies fail to demonstrate sufficient indicia of unreliability to outweigh the fact that [the witness] and [the defendant] were familiar with one another.”); State v. Peters, 10-0326, p. 11 (La.App. 4 Cir. 2/16/11), 60 So.3d 672, 679 (“Here, the likelihood of misidentification is not present. There is no question that [the victim] knew her assailant as the appellant lived for many years two houses down from her.”).
We, therefore, find that the evidence was sufficient to identify Mr. Small as the perpetrator of these crimes beyond a reasonable doubt. The prosecution negated any reasonable possibility of misidentification.
II
Mr. Small next contends that two errors, both arising from the prosecution’s improper commentary during rebuttal closing argument, entitle him to a new trial. First, Mr. Small claims that his attorney ineffectively assisted him by failing to move for a mistrial under Article 775 of the Louisiana Code of Criminal Procedure. Second, Mr. Small argues that the trial judge erred in refusing to admonish the jury despite his attorney’s specific request pursuant to Articles 771 and 774 of the Louisiana Code of Criminal Procedure. After our review of each claim, we find (1) that Mr. Small’s counsel’s performance was not constitutionallyHdeficienL ¶ and (2) that the trial judge did not err in his refusal to admonish the jury due to his vigilance and immediate intervention to prevent the prosecutor from making any further improper commentary. We begin by setting forth the facts which are relevant to both assignments of error and thereafter review each assignment individually.
A
Mr. Small complains of commentary made by the prosecutor during rebuttal closing argument. This commentary followed a prior warning by the trial judge to a previous line of questioning during the prosecutor’s direct examination of Mr. Andrews. During Mr. Andrews’s testimony, he stated that he could not continue. The judge then removed the jury and held a conference in chambers. When Mr. Andrews’ testimony resumed, he was asked by the prosecutor, “You said that you couldn’t do this the last time we were all down here. What was going through your head?” The defense objected and another conference was held in chambers. The judge found the line of questioning pertaining to Mr. Andrews’ fear of testifying to be “egregious,” “not relevant,” and “prejudicial.” The trial judge then warned the prosecutor not to ask Mr. Andrews any additional questions pertaining to that subject.
Then, during rebuttal closing argument, the issue of Mr. Andrews’ “fear” of testifying was again raised. The prosecutor stated, “I do not think that it takes much imagining to think of the fear [Mr. Andrews] was going through [when testifying], Think about this. No matter what happens today, [Mr. Andrews] can’t go back to that neighborhood.” During this rebuttal closing argument, the trial court interrupted the prosecutor numerous times with and without prompting by | ^defense counsel. Mr. Small’s counsel objected to the statement above, and yet another conference was held in chambers.
During this conference, the trial judge admonished the prosecutor to confine himself “to the facts of this case and not ... with being able to go back to that neigh *1283 borhood or anything like that.” The trial judge continued: “Look, the first mistake you were making, and you were bordering on telling the [j jurors how they would feel, and that is reversible error.... When you put it in the hands of a jury of how they would feel and all of that, that is a mistrial.... If I hadn’t have stopped you, and I would have let you finish, I would have granted a mistrial, but I caught you right before you put the jurors in a position like that with the victim in the case.’’(emphasis added)
After the judge ordered that the prosecutor discontinue that commentary, defense counsel moved that the jury be admonished “to disregard those portions of the State’s [rebuttal closing argument] that were objected to and ruled on by the Court as not proper.” The trial judge denied this oral motion stating that “whenever I caution a [jjury ... it brings more emphasis to it than it does to go to solving the problem. So, I will not do that, because I think you bring more emphasis to it.” The parties then returned to the courtroom and concluded the case.
B
Mr. Small contends that his constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution was violated when his attorney failed to move for a mistrial under La.C.Cr.P. art. 775 following what he describes as the prosecutor’s improper commentary during rebuttal closing argument. Mr. Small claims that his attorney’s failure to move for a mistrial constituted deficient performance, that he was | ^prejudiced by this deficient performance and deprived of access to a fair trial, and, thus, that we should overturn his conviction and order that a new trial be granted.
We begin by noting that a claim of ineffective assistance of counsel is ordinarily best-addressed by an application for post-conviction relief filed in the trial court which may then conduct a fall evidentiary hearing on the issue. See State v. Prudholm, 446 So.2d 729, 787 (La.1984). See also State v. Jackson, 05-1281, p. 15 (La.App. 4 Cir. 11/29/06), 947 So.2d 115, 125. When the appeal record contains enough evidence upon which to rule on the issue, however, the appellate court will make a determination in the interest of judicial economy. See State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. See also State v. Bradford, 02-1452, p. 13 (La.App. 4 Cir. 4/23/03), 846 So.2d 880, 889. Because we find the record in this case to be sufficient, we will address this assignment of error on appeal.
The Supreme Court has long held that “the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause....” Strickland v. Washington, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). “The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel’s skill and knowledge is necessary to accord defendants the ‘ample opportunity to meet the case of the prosecution’ to which they are entitled.” Strickland, 466 U.S. at 685,104 S.Ct. 2052 (quoting Adams v. United States ex rel. McCann, 317 14U.S. 269, 275-76, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Thus, “the right to counsel is the right to the effective assistance of counsel.” McMann v. Rich *1284 ardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).
 “The benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland, 466 U.S. at 686, 104 S.Ct. 2052. A convicted defendant’s claim this his counsel’s ineffective assistance entitles him to a new trial has two component parts.[5] Id. at 687, 104 S.Ct. 2052. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel’ guaranteed the defendant by the Sixth Amendment. Id. “Second, the defendant must show that the deficient performance prejudiced the defense.” Id. “Unless a defendant can make both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.” Id. Consequently, and importantly for our purposes here, we need not “address both components of the inquiry if the defendant makes an insufficient showing on one.” Id. at 697, 104 S.Ct. 2052. Here, because we find that Mr. Small cannot show that his trial counsel’s performance was deficient, we need not reach the second component of prejudice.
“[I]f an alleged error falls “within the ambit of trial strategy' it does not establish ineffective assistance of counsel.’ ” Jackson, 05-1281, p. 16, 947 So.2d at 125 n. 14 (quoting State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147). “[0]nce a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial 11firests with the accused and his attorney.” Bradford, 02-1452, p. 24, 846 So.2d at 895 (citing State v. Felde, 422 So.2d 370, 393 (La.1982)). We do “‘not sit to second-guess strategic and tactical choices made by trial counsel.’ ” State v. Hoffman, 98-3118, p. 40 (La.4/11/00), 768 So.2d 542, 579 (quoting State v. Myles, 389 So.2d 12, 31 (La.1979)). And, notably, the failure to move for a mistrial after a prosecutor’s improper commentary during closing rebuttal argument is particularly within the ambit of sound trial strategy. See, e.g., State v. Robinson, 01-1373, p. 1 (La.4/26/02), 816 So.2d 846, 846 (per curiam). This is especially so, when as here, Mr. Small had offered considerable plausible evidence to contradict the prosecution’s evidence, the impact of which may have been materially weakened if the prosecution had an opportunity for further investigation before a re-trial.
Accordingly, under these circumstances, we necessarily defer to trial counsel’s decision during the trial to limit his request to a jury admonition rather than to move for a mistrial. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
C
Mr. Small next contends that his Due Process rights under the Fourteenth Amendment were violated when the trial judge refused to admonish the jury after defense counsel’s specific request. Mr. Small argues that this ruling constituted reversible error and that he is entitled to a new trial. He bases his argument upon the mandatory requirement that “upon the request of the defendant ..., the court shall promptly admonish the jury to disregard a remark or comment made ... in argument within the hearing of the jury, *1285 when the remark is irrelevant or | ^immaterial and of such a nature that it might create prejudice against the defendant ... in the mind of the jury” when the comment is made by the prosecutor. La. C.Cr.P. art. 771(1).
Here, Judge Marullo was very attentive to the prosecutor’s overreaching, swiftly intervened to keep the prosecutor from elaborating on his irrelevant point, and thereby prevented the prosecutor from offering argumentative commentary that would prejudice Mr. Small. Judge Marullo’s interruptions reined in the prosecutor’s commentary and ensured that the prosecutor’s statements were “nothing more than an obscure reference” and were “made without explanation or elaboration.” State v. Tribbet, 415 So.2d 182, 185 (La.1982). “[T]he determination of whether prejudice has resulted lies in the sound discretion of the trial judge.” State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053 (internal quotation omitted). And Mr. Small has not shown us that the trial judge’s determination regarding whether prejudice might accrue to Mr. Small by giving an admonition — when one was not necessarily required — was a choice not permitted to the trial judge and as such not entitled to our deference. We agree with Judge Marullo that refraining from admonishing the jury on a given issue, at times, can be “a better course of action.” Tribbet, 415 So.2d at 185. See also State v. Juarbe, 01-2250, p. 10 (La.App. 4 Cir. 7/31/02), 824 So.2d 1240, 1248-49.
Ill
We now turn to Mr. Small’s claim that the trial record is incomplete to such a degree that reversal of his convictions is necessary due to our inability to provide the full judicial review to which he is entitled by law. Mr. Small itemized the portions of the record which were not included at the time of the lodging of the 117record. After our review of his itemized list of the missing portions of the record, we find that we can render complete judicial review and decline to reverse Mr. Small’s convictions and to order a new trial.
A
In Louisiana, a defendant convicted of a crime triable by a jury has a constitutional right of appeal as to questions of law. See La. Const, art. V, § 10; La.C.Cr.P. art. 912.1. In order to assure that appeals are properly and thoroughly considered, the Louisiana Constitution provides a complementary constitutional right which guarantees “judicial review based upon a complete record of all evidence upon which the judgment is based.” La. Const, art. I, § 19. See also State v. Pernell, 13-0180, p. 10 (La.App. 4 Cir. 10/2/13), 127 So.3d 18, 27, writ denied 13-2547 (La.4/4/14), 135 So.3d 640. The scope of what constitutes a “complete record” under Article I, Section 19 encompasses “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel,” La.C.Cr.P. art. 843, as well as “exact copies of all documentary evidence and other evidence ... in the order in which such evidence was filed.” Uniform Rules, Courts of Appeal, Rule 2-1.7. “[I]t is the duty of the court to ‘require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.’” State v. Landry, 97-0499, p. 3 (La.6/29/99), 751 So.2d 214, 216 (quoting La.C.Cr.P. art. 17). “[T]he trial judge is duty-bound to see that the court reporter makes a true, complete and accurate record of the trial.” Id. See also La.R.S. 13:961 C(l). And, notably, it is not the duty of the defendant to ensure that an adequate record exists. See id.
*1286 |1sTwo justifications form the foundation for the need for complete and comprehensive records. The Supreme Courts of both the United States and Louisiana have endorsed these justifications. See State v. Boatner, 03-0485, p. 4 (La.12/3/03), 861 So.2d 149, 152. First, it is essential in an adversarial legal system, particularly when counsel on appeal was not representing the client at trial, that a dependable record be provided so that errors by the trial court may be reviewed, assigned, and supported by appellate counsel. See Hardy v. United States, 375 U.S. 277, 280 n. 3, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); State v. Robinson, 387 So.2d 1143, 1144 (La.1980). And, second, a complete record ensures that the appellate court may review the transcripts for any errors committed during trial. See id. See also State v. Walker, 02-1350, p. 12 (La.App. 4 Cir. 4/9/03), 844 So.2d 1060, 1067. These two bases align with the scope of our appellate review as set forth in La.C.Cr.P. art. 920, which restricts our consideration of errors on appeal to those “designated in the assignment of errors,” and those “discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.”
But not every omission from a record on appeal constitutes a violation of constitutional rights warranting reversal of a conviction and the ordering of a new trial. See Walker, 02-1350, p. 11, 844 So.2d at 1066. Sometimes “[a]n incomplete record may be adequate for full appellate review.” State v. Hawkins, 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480. See, e.g., State v. Bright, 00-1255, p. 7 (La.App. 4 Cir. 2/6/02), 809 So.2d 1112, 1116-17. We determine whether the record “ ‘is so inadequate that the defendant’s constitutional right to judicial review is prejudiced’ ” by applying “a two-part analysis for materiality and prejudice, and will only remand for a new trial when both elements are satisfied.” State v. Norah, 12-1194, p. 9 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, 182, writ denied, 14-008419 (La.6/13/14), 140 So.3d 1188, quoting Boatner, 03-0485, p. 6, 861 So.2d at 153.
First, the materiality of a given omission is measured by its importance along with the value, relevance, and nature of other evidence made available in the trial record in light of the specific assignments of error set forth by the defendant as well as the errors patent on the face of the record. See Boatner, 03-0485, pp. 4-6, 861 So.2d at 153. “[inconsequential omissions or slight inaccuracies do not require reversal.” Hoffman, 98-3118, p. 49, 768 So.2d at 586; State v. LaCaze, 99-0584, p. 17 (La.1/25/02), 824 So.2d 1063, 1076.
Second, the defendant must show a “reasonable likelihood that he suffered prejudice” from that material omission in substantiating his other assignments of error. Boatner, 03-0485, pp. 5-6, 861 So.2d at 153. Thus, “[t]o justify reversal of a conviction and the ordering of a new trial, we must find that the omission from the trial record affects ‘substantial rights of the accused.’ ” Pernell, 13-0180, p. 12, 127 So.3d at 27-28 (quoting La.C.Cr.P. art. 921). This imports the harmless error rule into this analysis. La.C.Cr.P. art. 921 cmt. c.
If an omission is found to be material and prejudicial to judicial review of his trial, the defendant’s conviction should be reversed, see Hoffman, 98-3118, p. 49, 768 So.2d at 586, and “the interests of justice require that a defendant be afforded a new, fully recorded trial.” Landry, 97-0499, p. 3, 751 So.2d at 215-16.
B
Mr. Small listed in his brief (which he personally filed) those portions of the record which he claims are missing in whole or in part: transcripts of voir dire proceedings, the reading of the charges *1287 against Mr. Small, opening statements, closing arguments, jury instructions, and rebuttal closing arguments (including the | ^meeting in chambers); the photographic line-up presented to Tijai Andrews; Detective Harris’ Major Offense Reporting Form, interview of Lyndon Henry, MOTIONS report, notes, and incident recall report; and the defense’s response to the multiple bill of information, motion to quash the bill of information, and motion for downward departure from mandatory minimum sentence.
While this list at first glance appears extensive, upon inspection, most of what is claimed to be missing from the record is immaterial to Mr. Small’s appeal. As already noted, the materiality of certain documents in the record “varies depending on the legal bases of the defendant’s assignments of error, the missing portion’s relevance in relation to those assignments, and our ability to properly review those assignments in the absence of that portion of the record.” Norah, 12-1194, p. 9, 131 So.3d at 182 (citing Boatner, 03-0485, p. 4, 861 So.2d at 153).
Here, most of the omitted portions of the record have no relevance to Mr. Small’s other assignments of error, raised either by his appellate counsel or by him personally, related to his convictions. Thus, the omission from the record of the transcripts of the reading of the charges to Mr. Small, opening statements, closing arguments, jury instructions, and Detective Harris’ interview of Lyndon Henry, Major Offense Reporting Form, MOTIONS report, notes, and incident recall report are all immaterial to our review of Mr. Small’s appeal as they have no relevance to any of his claims. Additionally, the record has always contained the transcript of the entirety of the meeting in the judge’s chambers which occurred during the prosecutor’s rebuttal closing argument the record. Thus, we limit our discussion to the remaining omissions individually.
First, the photographic line-up with which Mr. Andrews identified Mr. Small while Mr. Andrews remained in the hospital is not included in the record. There is 121 no question that the photographic lineup is material to our review of his assignment of error dealing with the sufficiency of evidence to negate any reasonable probability of misidentification. Mr. Small has failed, however, to make any showing as to how he was prejudiced through an inability on our part to review that assignment of error. His briefing merely lists the photographic line-up as being absent from the record. Detective Harris testified as to the line-up with which Mr. Andrews identified Mr. Small. Moreover, Mr. Andrews testified that he knew Mr. Small and identified him to the police as the man that shot him as well as described Mr. Small’s role in the shooting.
Second, the complete transcript of the prosecutor’s rebuttal closing argument might also be material to our review of Mr. Small’s claim that the trial judge erred when he refused to admonish the jury regarding the prosecutor’s improper commentary. But, again, Mr. Small has failed to make any showing as to how he was prejudiced by this omission; his briefing merely lists that transcript as being absent from the record. The transcript of the portions of the rebuttal closing argument in the record does contain the commentary to which defense counsel objected and thus preserved for our review. Mr. Small does not claim that any additional, arguably improper commentary occurred at that time. Thus, we find that Mr. Small’s right to judicial review was not prejudiced by the inclusion of only an excerpted portion of the argument.
Lastly, Mr. Small contends that the lack of a complete transcript of the voir dire *1288 proceedings undermines his ability to establish error in the trial judge’s rulings to excuse two jurors for cause. These transcripts would certainly be material to our review of the merits of Mr. Small’s assignment of error. Without the voir dire examination of the prospective jurors, there is no feasible way for us to review laawhether those jurors were properly excused for cause by the trial judge from the panel. The transcript included in the record simply contains the stated reasons by the district attorney for the juror’s removal and does not contain any of the voir dire examination of either juror. In order to dispose of this assignment, however, we do not need the transcripts of the voir dire examination as the prosecutor was granted a total of twelve peremptory challenges and chose to only use eight of those peremptory challenges during voir dire. See La.C.Cr.P. art. 799. Thus, at the end of voir dire, the prosecutor had not exhausted his peremptory challenges and, in fact, had four remaining. During voir dire, the prosecutor also only challenged four jurors for cause; the trial judge excused all four jurors for cause. But Mr. Small only assigns as error the rulings on two of the four jurors excused for cause. Because the prosecution would not have exhausted its allotted peremptory challenges even if the two challenged rulings for cause were in error, we could not grant any relief on this claim and thus Mr. Small’s right to judicial review was not prejudiced by the incomplete record. See La.C.Cr.P. art. 800 B.[6]
Thus, the omissions claimed in the trial record in this case neither require reversal of Mr. Small’s convictions nor the ordering of a new trial.
IV
In this Part we turn to consider the sentences imposed upon Mr. Small.
We first observe that we have identified a patent error in the sentencing of Mr. Small as a habitual offender on both counts because the multiple bill of information only sought enhancement of the penalty on a single, albeit unidentified count. See La.C.Cr.P. art. 920(2). The multiple bill filed in this matter only ^asserted that the defendant was a multiple offender as to one count. Nevertheless, the trial judge sentenced the defendant as a multiple offender on both counts. Accordingly, we necessarily vacate Mr. Small’s multiple offender sentences and remand to the trial court to identify which count of attempted first degree murder will the penalty be enhanced under Habitual Offender Law, codified as La. R.S. 15:529.1, and which count mil the sentence originally imposed be reinstated.
We next observe that Mr. Small moved, and the record as now supplemented confirms, for a downward departure from the statutory minimum established by the legislature. The trial judge, however, did not consider a downward departure because of his erroneous view that he was without authority to consider such a departure. The sentencing range for a second felony offender, as here, convicted of attempted first degree murder is not less than twenty-five years and not more than one hundred years. See La. R.S. 14:27 D(l)(a), 14:30.1 B; 15:529.1 A(l). Thus, the trial judge imposed the legislatively-mandated minimum sentence.
As we emphasized in Pemell, “a sentencing judge is constitutionally authorized to guarantee that sentences are not excessive, and, ... in rare and exceptional *1289 cases, a sentencing judge does have the discretion to deviate downward from a legislatively mandated sentence.” 13-0180, p. 6, 127 So.3d at 29 (emphasis in original; citation omitted). The sentencing judge is required, when a defendant properly seeks a downward departure, to explicitly determine whether the defendant’s situation is one of those rare and exceptional cases that would justify a downward departure. See id. at 8,127 So.3d at 29-30. Thus, this error also requires remand.
UREMAND INSTRUCTIONS
We remand this matter to the district court for re-sentencing only with these instructions.
First, the district judge shall identify which count of attempted first degree murder will the penalty be enhanced under Habitual Offender Law, codified as La. R.S. 15:529.1, and which count will the sentence originally imposed be reinstated.
Second, before imposing sentence under the Habitual Offender Law, the district judge shall conduct a hearing on the defendant’s pending motion to reconsider sentence under the criteria established in State v. Sepulvado, 367 So.2d 762 (La.1979), and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. If the sentencing judge concludes that a sentence of twenty-five years at hard labor without the benefit of parole, probation, or suspension of sentence is excessive and that a downward departure is authorized, he shall impose the most severe sentence that is not constitutionally excessive. See State v. Lindsey, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343. If the sentencing judge decides to downwardly depart from the legislatively-mandated sentence either by reason of its duration or, for example, by its restriction on parole eligibility, he shall justify his reduction. See State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669, 669 (per curiam).
We reserve the parties’ rights to appeal any adverse ruling by the district court on remand. See, e.g., State v. Rainey, 091510, p. 5 (La.App. 4 Cir. 7/21/10), 43 So.3d 1090, 1093.
DECREE
The attempted first degree murder convictions of Ricky Small are affirmed. The sentences imposed, however, are vacated, and the matter is remanded to the district court for re-sentencing in accord with our instructions, reserving unto the | ^parties the right to appeal the sentence following the district court’s disposition of the motion.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED WITH INSTRUCTIONS.

. We have, as we always do, examined the record for errors patent and have detected none with respect to Mr. Small’s convictions themselves. See La.C.Cr.P. art. 920(2).

. 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

. Manson v. Brathwaite considered when, under the Due Process Clause, evidence of suggestive out-of-court identifications may be considered by the jury. 432 U.S. at 99, 97 S.Ct. 2243. We are considering the same factors under a sufficiency of evidence review.

. Mr. Small notes that our decision in Wood-fork heavily-relied on the Louisiana Supreme Court’s analysis in State v. Mussall, 523 So.2d 1305 (La.1988), and that Mussall is sui gener-is, "distinguished by its truly bizarre facts.” State in the Interest of C.D., 11-1701, p. 6 (La.7/2/12), 93 So.3d 1272, 1276.

. The Louisiana Supreme Court, in State v. Washington, 491 So.2d 1337, 1338-39 (La.1986), adopted the framework for ineffective assistance claims as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. La.C.Cr.P. art. 800 B provides: "The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.”